

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 3, 1957   *Reaffirm by*
*M - 84*

Honorable Howard D. Dodgen
Executive Secretary
Game and Fish Commission
Austin, Texas

Opinion No. WW-150

Re: Whether or not the Game
and Fish Commission has
authority to issue permits
for commercial shell dred-
ging purposes on property
which has been patented to
the Nueces County Naviga-
tion District and whether
or not shell may be re-
moved from said property
under and by virtue of
said permits. And related

Dear Mr. Dodgen:    questions.

In a recent request for an opinion of this office you
state as follows:

"Under Article 8225, Vernon's Texas Statutes,
1948, the Commissioner of the General Land Office
is directed to issue patents to navigation dist-
ricts.

"Article 4051, Vernon's Texas Statutes, 1948,
places all the sand, shell and gravel in the pub-
lic waters of this state under the management and
control of the Texas Game and Fish Commission.

"Article 4026, Vernon's Texas Statutes, 1948,
provides that all aquatic life contained in the
fresh water streams of the state is the property
of the people of the State of Texas and all the
public rivers, bayous, lagoons, creeks, lakes, bays
and inlets in this State and all that part of the
Gulf of Mexico within the jurisdiction of this
State, together with their beds and bottoms and
all the products thereof shall continue and remain
the property of the State of Texas except in so

far as the State shall permit the use of said waters and bottoms or permit the taking of the products of such waters and bottoms and in so far as this use shall relate to or affect the taking of x x x x sand, gravel, marl, or mud-shell and all other kinds of shell, the Game and Fish Commission shall have jurisdiction over and control of in accordance with and by the authority vested in it by the laws of this State.

"On October 22, 1947, July 31, 1951, and January 9, 1956, the Commissioner of the General Land Office issued patents to the Nueces County Navigation District for certain areas in Corpus Christi and Nueces Bays. A certified copy of each patent is attached.

"The Texas Game and Fish Commission has, for a number of years, issued permits to the Corpus Christi Shell Company, the General Dredging Company and Heldenfels Brothers, all of Corpus Christi to dredge shell for commercial purposes from portions of Nueces and Corpus Christi bays. In some instances the permits would extend to areas heretofore patented to the Nueces County Navigation District and the shell dredgers have informed this office that the Nueces County Navigation District has instructed them not to dredge for shell on property patented to it. In fact, we have been informed the Nueces County Navigation District stopped the Corpus Christi Shell Company from dredging on its property and ordered its dredge and barges off its waters and not to trespass thereon."

You then ask the following two questions:

"1. It is requested, therefore, that you please inform me whether, in your opinion, the Game and Fish Commission has authority to issue permits for commercial shell dredging purposes on property which has been patented to the Nueces County Navigation District and whether or not shell may be removed from said property under and by virtue of said permits.

"2. In the event your answer to the above question is negative, then please inform me whether, in your opinion, commercial shell dredging may be done on property heretofore patented to the Nueces County Navigation District without a permit from the Game and Fish Commission."

Under the authority of Article 16, Section 59, of the Constitution of Texas, the development of navigation is declared to be a public purpose and the legislature is authorized to pass laws which may be appropriate to its development. Nueces County Navigation District was organized and exists under legislation authorized by the aforementioned constitutional provision. This navigation district is a political subdivision of the State performing governmental functions. Willacy County Water Control and Improvement District No. 1 v. Abendroth, 142 Tex. 320, 177 S.W. 2d 936. Broadly stated, the Navigation District is charged with the development of navigation within its boundaries. Article 8198, V.C.S., et seq.

Article 8225, V.C.S., authorizes navigation districts to acquire the necessary right of way and property of any kind contemplated by this title. This article places within the discretion of the District the authority to determine what land, including State owned submerged land, it necessarily must acquire for navigational development within its district.

Article 8225 reads, in part:

"The Commissioners are empowered to acquire the necessary right of way and property of any kind for all necessary improvements contemplated by this title by gift, grant, purchase or condemnation proceedings. Any Navigation District heretofore or hereafter organized under this title or any General Law under which said subdivision may be created shall have the right to purchase from the State of Texas any lands and flats belonging to said State, covered or partly covered by the waters of any of the bays or other arms of the sea, to be used by said District for the purposes authorized by law with the right to dredge out or to fill in and reclaim said lands or otherwise improve the same; . . . ."

In compliance with Art. 8225 the three tracts of land involved were patented to the Nueces County Navigation District.

To correctly answer your first question it is necessary to ascertain exactly "what" in the area in question was appropriated or granted by these patents.

Re-emphasis should be made of the fact that Navigation Districts are political subdivisions of the State performing governmental functions. Willacy County Water Control and Improvement District No. 1 v. Abendroth, supra. These patents are not grants from private individuals to private individuals. The rule of construction that grants are to be construed strictly against the grantor in favor of the grantee is not applicable here. These patents have been issued under the authority of an Act of the Legislature. The legislative intent as to exactly what is to be granted or appropriated under the authority of Art. 8225 is the dominant factor for consideration.

Art. 8225 provides that the land appropriated is

"To be used by said District for the purposes authorized by law."

This phraseology, we believe, clearly restricts these grants to that of an "easement" or "use" by the Navigation District.

This view is substantiated by the fact that our courts have held since the days of the Republic that Acts of the Legislature granting unencumbered fee simple title to lands under navigable waters of the State must be explicit as to their intent to grant the fee simple title thereto. State v. Bradford, 121 Tex. 515, 50 S.W. 2d 1065; City of Galveston v. Mann, 135 Tex. 319, 143 S.W. 2d 1023; Lorino v. Crawford Packing Co., 142 Tex. 51, 175 S.W. 2d 410. In the instant case, Art. 8225 first, restricts submerged lands conveyed thereunder to the use of the Navigation Districts (as indicated by the underlined quote above) and secondly, restricts this use to purposes authorized by law. Stated broadly, the purposes for which the Navigation District is authorized to hold land are for navigational purposes. Under these circumstances we can only construe Art. 8225 as authorizing the appropriation to the Navigation District of the "paramount use for navigation purposes" of State owned submerged land.

Our view is further supported by the fact that under Art. 8225 the District is to pay the nominal sum of one dollar ($1.00) an acre for the land in question. This fact manifests

the intent of the legislature to grant or appropriate something less than the fee simple title to the land in question.

In final support of our view, is the fact that Art. 8247b, V.C.S., provides that Navigation Districts may declare their unneeded lands surplus and sell them to private parties. If a Navigation District were authorized to acquire the fee simple title to State owned submerged lands under Art. 8225, it might subsequently declare such land surplus and dispose of them under Art. 8247b. We do not believe that it was the legislative intent by enacting Art. 8225 to create such a method for the disposal of State owned submerged land. Thus, in view of Art. 8247b, we believe the legislature intended that Art. 8225 authorize the appropriation by Navigation Districts of only an "easement" or "paramount right of use" in State owned submerged lands.

By the provisions of Art. 4026 and 4051, et seq., V.C.S., the Legislature has placed the management and control of the shell and gravel underlying the waters of the State in the Game and Fish Commission and has likewise authorized the Game and Fish Commission to issue permits for the commercial dredging and sale of this shell.

Since Art. 8225 authorized only the grant of a "paramount use for navigation" in State owned submerged lands, these Acts are not mutually antagonistic but can be harmoniously construed together. We believe the Legislature so intended. Granting of commercial shell dredging permits by the Game and Fish Commission upon the lands in question is not necessarily incompatible with "the paramount use for navigation purposes" to which the lands have been appropriated. If in fact commercial shell dredging does not interfere with the paramount use to which the land is appropriated, then we are of the opinion that the Game and Fish Commission is authorized to issue commercial shell dredging permits on the submerged lands included in patents submitted with your request. Obviously a permit validly issued would authorize the removal of shell from the area included within the limits of the permit. Should any conflict arise between the Navigation District and the Game and Fish Commission concerning shell dredging on the area in question, this conflict should be resolved by administrative processes between the governmental agencies bearing in mind the paramount use for navigation.

In reply to your second question, we inform you that the Navigation District might remove or provide for the removal of shell commercially from the area in question without obtaining a shell dredging permit from the Game and Fish

Commission. We do not mean to imply by this answer that Navigation Districts are legally authorized or empowered to perform any function other than those in development of and in aid of navigation. However, if as an incident to construction work, it is necessary to remove shell from the submerged land in question (dredging channels, etc.) we are of the opinion that the District might receive remuneration for the shell so removed without the necessity of obtaining a commercial shell dredging permit from the Game and Fish Commission. Our views expressed herein are consistent with Art. 976, V.P.C., wherein said article declares it to be a penal offense to remove or disturb shell and gravel within the waters of this State other than that necessary or incident to navigation or dredging under State or Federal authority without first obtaining a permit from the Game and Fish Commission.

## SUMMARY

The Game and Fish Commission has authority under Articles 4026 and 4051, et seq., V.C.S., to issue permits for commercial shell dredging on State owned lands patented to the Nueces County Navigation District under authority of Article 8225, V.C.S., so long as the dredging does not interfere with the paramount use of said land for navigation purposes.

A permit from the Game and Fish Commission to dredge shell on lands heretofore patented to the Nueces County Navigation District is not a prerequisite to the removal of shell commercially from said lands so long as such removal is incidental to authorized navigational purposes.

Very truly yours,

WILL WILSON
Attorney General of Texas

By Milton Richardson
Milton Richardson
Assistant

MR:bk

Hon. Howard D. Dodgen, page 7 (WW-150)

APPROVED:

OPINION COMMITTEE
H. Grady Chandler, Chairman